**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

**SPECIAL TERM**

-------------------------------------------------------------------x

paul Anthony son of vassel, living man Executor )    Index No.: 638/2017
Ex Ratione
PAUL VASSEL )

            Petitioner/Claimant/Libelant, )

     -against- )

FIRSTORM PROPERTIES 2, LLC; )    **SUMMONS**
FIRSTORM PARTNERS 2 LLC; GREYSTONE BANK AKA
GREYSTONE MULTIUNIT, LLC & GREYSTONE )    **Premises Address:**
COMPANY, INC; TRUSTEE (TBD) AS TRUSTEE FOR )    **109-18 Merrick Blvd**
SECURITIZED TRUST (TBD); SERVICER (TBD);
MORTGAGE ELECTRONIC REGISTRATION SYSTEM, )    **Jamaica, NY 11433**
AKA "MERS"; Michael F. King;
PLAZA GARDENS REAL ESTATE CORP; )    **Block 10188  Lot 8**
William McDonald; Mark R. Cashman;
Albert Basal; Farrel R. Donald; )
Stephen Samuel Weintraub; David Gongora;
Jeffrey A. Bodoff; )
THE ABRAMSON LAW GROUP, PLLC;
OLD REPUBLIC NATIONAL TITLE INSURANCE CO.;
TRIMONT REAL ESTATE ADVISORS; SUCCESSORS,
DOES 1 – 100
           Respondent(s)/Libelee(s)

-------------------------------------------------------------------x

**TO THE ABOVE NAMED RESPONDENT(S)/LIBELEE:**

    **YOU ARE HEREBY SUMMONED** to answer the claim in this action, and to serve a copy of

your answer, or, if Claim is not served with this Summons, to serve a Notice of Appearance on the

Respondent(s)/Libelee(s) within twenty (20) days after the service of this Summons, exclusive of the day

of service, where service is made by delivery upon you personally within the State, or within thirty (30)

days after completion of service where service is made in any other manner, and in case of your failure to

appear or answer, judgment will be taken against your by default for the relief demanded in the claim.

Date: 1/20/2017

UCC1-308/UCC1-207

By: _____

Paul the son of Vassel, Executor
Ex Relatione
PAUL VASSEL
Address:   109-18 Merrick Blvd,
           Jamaica, NY 11433
           917-453-8645

FIRSTORM PROPERTIES 2, LLC;
3500 Lenox Road, Suite G1
Atlanta, GA 30326

FIRSTSTORM PARTNERS 2, LLC
6640 Imperial Drive
Waco, TX 76714

GREYSTONE BANK AKA GREYSTONE
MULTIUNIT, LLC, AKA GREYSTONE AND
COMPANY, INC
152 W 57th Street, 9th Floor,
New York, NY 10019

MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.
1818 Library Street, Suite 300
Reston, Virgina 20190

Michael F. King
256 93rd Street, Fl 1
Brooklyn, NY 11209

PLAZA GARDENS REAL ESTATE CORP
147-24 Hillside Avenue, 2nd Floor
Jamaica, NY 11435

William McDonald
6640 Imperial Drive
Waco, TX 76714

Mark Cashman
3500Lenox Road, Suite G1
Atlanta, Georgia 30326

Albert Basal
147-24 Hillside Avenue, 2nd Floor
Jamaica, NY 11435

Farrel Donald
1169 Nostrand Avenue
Brooklyn, NY 11225

Stephen Samuel Weintraub
8030 164th Street
Jamaica, NY 11432

Jeffrey A. Bodoff
570 Lexington Avenue, FL 23rd
New York, NY 10022

Stephen Samuel Weintraub
8030 164th Street,
Jamaica, NY 11432

THE ABRAMSON LAW GROUP, PLLC
570 Lexington Avenue, FL 23rd
New York, NY 10022

OLD REPUBLIC NATIONAL TITLE
COMPANY
530 South Main Street, Suite 1031
Akron, OH 44311

TRIMONT REAL ESTATE ADVISORS
3131 Turtle Creek Blvd., Suite 400
Dallas, Texas 75219

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

JAN 26 2017

paul anthony son of vassel, Living man Executor )
Ex Relatione
PAUL VASSEL ) Index No.: 638/2017

              Petitioner/Claimant/Libelant ) **COMPLAINT**

          -against- ) **WRONGFUL FORECLOSURE;**
) **LACK OF CAPACITY TO**
FIRSTORM PROPERTIES 2, LLC; ) **FORECLOSE;**
FIRSTORM PARTNERS 2 LLC; GREYSTONE BANK AKA ) **LACK OF CAPACITY TO SUE**
GREYSTONE MULTIUNIT, LLC & GREYSTONE ) **FRAUDULENT CONVERSION;**
COMPANY, INC; TRUSTEE (TBD) AS TRUSTEE FOR ) **BREACH OF TRUST**
SECURITIZED TRUST (TBD); SERVICER (TBD); ) **FRAUD IN THE CONCEALMENT;**
MORTGAGE ELECTRONIC REGISTRATION SYSTEM, ) **FRAUD IN THE INDUCEMENT;**
AKA "MERS"; MICHAEL F. KING; ) **VIOLATIONOF THE CONSUMER**
PLAZA GARDENS REAL ESTATE CORP; ) **PROTECTION ACT;**
WILLIAM MCDONALD; MARK R. CASHMAN; ) **DECEPTIVE TRADE PRACTICE;**
ALBERT BASAL; FARREL R. DONALD; ) **HARASSMENT;**
STEPHEN SAMUEL WEINTRAUB; DAVID GONGORA; ) **SLANDER OF CREDIT;**
JEFFREY A. BODOFF; ) **INTENTIONAL INFLICTION OF**
THE ABRAMSON LAW GROUP, PLLC; ) **EMOTIONAL DISTRESS**
OLD REPUBLIC NATIONAL TITLE INSURANCE CO.; ) **VOID JUDGMENT**
TRIMONT REAL ESTATE ADVISORS; SUCCESSORS, ) **PUNITIVE DAMAGES;**
DOES 1 – 100 ) **RESCISSION**

            Respondent(s)/Libelee(s) )**TRIAL BY JURY DEMANDS**

-----------------------------------------------------------------------------x

1.    **HERE NOW paul anthony son of vassel, living man, Executor, Ex Relatione**

PAUL VASSEL "Petitioner"/"Libelant"/"Claimant" (hereinafter Claimant). Claimant, an

Executor, NOT A CORPORATION, a living sentient, flesh and blood man with blood flowing,

heart pumping, Finger and Foot Prints, hereby establish and declared upon penalty of perjury on

the limited commercial liability, on and for the public record, that the following facts are true, and

correct to the best of Claimant firsthand knowledge and study. Claimant rescinds, revoke, and

cancel nunc pro tunc and made void ab initio any and all Power of Attorney and Juridiction know or unknow. All contracts agreements and otherwise signed without Claimant knowledge to the fact in bad faith or fraud, or forgery of signature, that was designed to hide, conceal, deprive or craftily construed to replace or assume any legitimate and costitutional status as a natural born man upon the land, a living sentient, flesh and blood man with soul, finger, and foot prints. Claimant is not schooled at law and reserved his right to amend this claim. All the facts stated herein are true, correct, and complete in accordance with Claimant best knowledge, claiming of the libelee/Respondent (hereinafter Respondent) as named above, and each of them, as follows:

## I. THE PARTIES

2. Claimant is now, and at all times relevant to this action, domicile in Queens County, New York State Republic.

3. Claimant is advised and believes, and thereon alleges that, Respondent, FIRSTSTORM PROPERTIES 2, LLC AND FIRST STORM PARTNERS 2, LLC., is one of the same, with last known addresses 6640 Imperial Drive, Waco, TX 76714 and 3500 Lenox Road, Suite G1, Atlanta, GA 30326.

4. Claimant is advised and believes, and thereon alleges that, Respondent, GREYSTONE BANK AKA GREYSTONE MULTIUNIT, LLC, AKA GREYSTONE AND COMPANY, INC, is one of the same, with last known address 152 W 57th Street, 9th Floor, New York, NY 10019.

5. Respondent, TRUSTEE (TBD), as Trustee for securitized TRUST (TBD). Claimant is advised and believes, and thereon alleges that, Respondent, TRUSTEE (TBD), is a national banking association, doing business in QUEENS County, NEW YORK State and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage as more particularly described in this Claim.

6. Claimant is advised and believes, and thereon alleges that, Respondent is a corporation, doing business in QUEENS County, NEW YORK State and is the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage as more particularly described in this Claim.

7. Claimant is advised and believes, and thereon alleges that, Respondent is a corporation, doing business in QUEENS County, NEW YORK State and is the purported Depositor for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage as more particularly described in this Claim.

8. Claimant is advised and believes thereon alleges that, Respondent SERVICER (TBD, is a corporation, doing business in QUEENS County, NEW YORK State and is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage as more particularly described in this Claim.

9. Respondent, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Claimant is advised and believes, and thereon alleges, that MERS is a corporation duly organized and existing under the laws of NEW YORK, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: ꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏ. MERS is doing business in QUEENS County, NEW YORK State Republic. Claimant is further advised and believes, and thereon alleges, that Respondent MERS is the purported Beneficiary under the Mortgage and/or is a purported participant in the imperfect securitization of the Note and/or the Mortgage, as more particularly described in this Claim.

10. Claimant is advised and believes, and thereon alleges that, Respondent Michael F. King; is an attorney with Registration Number 1082825, with last known address 256 93rd Street FL 1, Brooklyn, NY 11209.

11. Claimant is advised and believes, and thereon alleges that, Respondent PLAZA GARDENS REAL ESTATE CORP; is a corporation, with last known address 147-24 Hillside Avenue, 2nd Floor, Jamaica, NY 11435.

12. Claimant is advised and believes that, Defendant William McDonald, is an alleged Vice President for FIRSTSTORM PROPERTIES 2, LLC, and FIRSTSTORM PARTNERS 2, LLC with last known address as 6640 Imperial Drive, Waco, TX 76714.

13. Claimant is advised and believes, that, Defendant Mark Cashman; is an alleged Vice President for FIRSTSTORM PROPERTIES 2, LLC with last known address as 3500 Lenox Road, Suite G1, Atlanta, Georgia 30326.

14. Claimant is advised and believes, that, Defendant Albert Basal; is an alleged Secretary for PLAZA GARDENS REAL ESTATE CORP, with last known address as 147-24 Hillside Avenue, 2nd Floor, Jamaica, NY 11435.

15. Claimant is advised and believes, and thereon alleges that Farrel R. Donald, is an attorney with Registration Number 4671574, with last known address 1169 Nostrand Avenue, Brooklyn, NY 11225.

16. Claimant is advised and believes, and thereon alleges that Stephen Samuel Weintraub is an attorney with Registration Number 1231950, with last known address 8030 164th Street, Jamaica, NY 11432.

17. Claimant is advised and believes, and thereon alleges that David Gongora, is a Notary License Number 130699298, with last known address TRIMONT REAL ESTATE ADVISORS, 3131 Turtle Creek Blvd., Suite 400, Dallas, Texas 75219.

18. Claimant is advised and believes, and thereon alleges that Jeffrey A. Bodoff, is an attorney with Registration Number 2230322, with last known address 570 Lexington Avenue, FL 23rd, NY 10022.

19. Claimant is advised and believes, and thereon alleges that THE ABRMSON LAW GROUP, LLC, with last known address 570 Lexington Avenue, FL 23rd, NY 10022.

20. Claimant is advised and believes, and thereon alleges that OLD REPUBLIC NATIONAL TITLE COMPANY, with last known address 530 South Main Street, Suite 1031 Akron, OH 44311.

21. Claimant is advised and believes, and thereon alleges that TRIMONT REAL ESTATE ADVISORS, with last known address , 3131 Turtle Creek Blvd., Suite 400, Dallas, Texas 75219.

22. .Claimant at all times relevant to this claim, domicile at the Property located at 10918 MERRICK BLVD. JAMAICA, New York state Republic (the "Property").

23. Claimant does not know the true names, capacities, or basis for liability of Respondent(s)/Defendant(s) sued herein as Successors and Does 1 through 100, inclusive, as each fictitiously named Respondent(s)/Defendant(s) is in some manner liable to Claimant, or claims some right, title, or interest in the Property. Claimant reserved the right and will amend this Claim to allege their true names and capacities when ascertained. Claimant is advised and believes, and therefore alleges, that at all relevant times mentioned in this Claim, each of the fictitiously named Respondent(s) are responsible in some manner for the injuries and damages to Claimant so declared that such injuries and damages were proximately caused by such Respondent(s), and each of them.

24. Claimant is advised and believes, and thereon declared, that at all times herein mentioned, each of the Respondent(s) were the agents, employees, servants and/or the joint-ventures of the remaining

Respondent(s), and each of them, and in doing the things declared herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## II. JURISDICTION

25. Claimant invoke common law jurisdiction.

26. The transactions and events which are the subject matter of this Claim all occurred within QUEENS County, NEW YORK State Republic.

27. The Property is located within QUEENS County, NEW YORK State Republic with an address of 10918 MERRICK BLVD. JAMAICA, NY [11433-9998].

## III. RESERVATION OF RIGHTS

28. Claimant is not schooled at law and reserved his right to amend this claim.

29. Claimant maintained, and have at all time retained constitutionally secured Right especially, but not limited to the rights to remain silent, the rights to a Trial by Jury and the rights to confront accuser, in all aspect of this instant matter;

   *Bradly v U.S. 397, U.S. 742 "Waiver of Constitutional Right must be only be done voluntarily, they must be knowing intelligent acts done with sufficient awareness of the relevant circumstances and consequences."*

30. Claimant reserved all Rights guaranteed by the Constitution of the united States specific to but not limited to the Bill of Rights Article I, IV, V, VI, VII and per New York State Republic Constitution Article 1; Johnson v Zerbst U.A. "If the Bill of Rights in not complied with, the court no longer has jurisdiction to proceed…"

## IV. RIGHT TO TRIAL BY JURY

31. Claimant is advised and believes that a party is entitled to a trial by jury, if duly demanded, in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right of trial by jury, in any proceeding. To get a jury trial in a civil case, you must demand it at the time you file your Note of Issue, which places the matter on the trial calendar or it will be deemed waived. A party may not withdraw a demand for trial by jury without the consent of the other parties, regardless of whether another party previously filed a note of issue without a demand for trial by jury.

32. Claimant advised and believes that "Any party may demand a trial by jury of any issue of fact triable of right by a jury, by serving upon all other parties and filing a note of issue containing a demand for trial by jury. Any party served with a note of issue not containing such a demand, may demand a trial by jury by serving upon each party a demand for a trial by jury and filing such demand in the office where the note of issue was filed within fifteen days after service of the note of issue. If no party shall demand a trial by jury as provided herein, the right to trial by jury shall be deemed waived by all parties.

33. Claimant demands a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact which may be triable as a matter of controlling case law, and Claimant demands an advisory jury on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the deciding issues presented to the jury for resolution.

34. Claimant is advised and believes that a demand for trial by jury may not be withdrawn without the consent of the parties.

## V. INTRODUCTORY FACTS

35. This is an action brought by Claimant for injunctive and equitable relief, and for compensatory, special, general, statutory damages and punitive damages.

36. Claimant moving pursuant to U.C.C. 3-501 and U.C.C. Article 9 and exercising Claimant unconditional Right of Rescission of Loan Credit Transaction pursuant to the Truth in Lending Act, 15 U.S.C. §1635 and 12 C.F.R. §226.23 (Regulation Z) and 12 U.S.C. §226.23 Appendix H.

37. Respondent did not deliver a clean Title pursuant to Money and Finance Law 31 C.F.R.B Chapter 1, Part 103.11(u)(iii) and U.C.C. 3-108, Article 3 of New York UCC to deliver the Title.

38. Claimant delivered a Promissory Note to Respondent and upon reception of the Promissory Note should convey a clean Title. Respondent did not disclose such rights with accordance with

regulation of the Bureau in 31 CFR §103.11 (u)(iii) and 12 U.S.C. Chapter 16 §1831 and U.C.C. 3-108.

39. Claimant declares that in order to have a binding contract, the parties must have a meeting of the minds with regard "to all essential and material terms of the agreement." Player v. Chandler, 299 S.C. 101, 382 S.E.2d 891, 893 (1989). These essential terms include price, time, and place. Edens v. Laurel Hill, Inc., 271 S.C. 360, 247 S.E.2d 434, 436 (1978). The meeting of the minds cannot be based on "secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party." Player, 382 S.E.2d at 894.

40. Respondent failed to meet the clear and conspicuous disclosure Hypertichnicality Standard required under the Truth In Lending Act (T.I.L.A.) and Regulation Z.

41. Congress passed T.I.L.A. 82 Stat. 146, as amended, 15 U.S.C. §1635 and the Dodd-Frank Wall Street Reform and Consumer Protection Act §§1601(b)(1), 1100A(2), 1100H, 124 Stat/ 2036, 2107, 2113 to help consumers "avoid the uninformed use of Credit and to protect the consumer against inaccurate and unfair credit billing practice.

42. Claimant declares that the Property in this action is Fee Simple and have no contractual agreement with Respondent.

> fee simple *n. absolute title to land. free of any other claims against the title. which one can sell or pass to another by will or inheritance. This is a redundant form of "fee," but is used to show the fee (absolute title) is not a "conditional fee," or "determinable fee." or "fee tail." Like "fee" it is often used in deeds transferring title as in "Harry Hadit grants to Robert Gotit title in fee simple..."*

Claimant is the homeowner, disputes the title and ownership of the real property in question (the "Property"), which is the subject of this action, in that the alleged originating mortgage lender, and others alleged to have ownership of alleged Claimant mortgage note and/or Mortgage, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory

Note and Mortgage related to the Property, and, thus, do not have lawful ownership or a security interest in Claimant's Home which is described in detail herein. Additionally, Claimant brings causes of action against all Respondent for Wrongful foreclosure, Lack of Standing to Foreclose, Fraudulent conversion, Common Law Fraud, Fraud in the Concealment, Fraud in the Inducement, Deceptive Trade Practice, Harassment, Intentional Infliction of Emotional Distress, Void Judgment, Statutory Damages, Punitive Damages and other damages, and Rescission. Declaratory relief based, and violations of T.I.L.A., R.E.S.P.A., upon the facts and circumstances surrounding Claimant's alleged original loan transaction and subsequent securitization. Respondent violations of these laws are additional reasons this Court should award damages, rescission, attorney and injunctive relief as requested below.

43. Respondent are a part of the scheme From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by alleged originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Claimant alleged home loan was one of the 60 million notes that were securitized.

44. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

45. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment or Transfer made every step of the way, and, furthermore, each Note would be indorsed to the next party by the previous assignee or transferee of record.

46. Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes. In order to maintain their bankruptcy-protected status, REMIC's had to have closing dates by which every mortgage note and/or security device like a Mortgage or Mortgage/Deed of Trust was to be sold to the REMIC and had to be "owned" by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

47. How a particular mortgage loan ended up being transferred to a REMIC in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions.

48. When the Claimant in this case closed on the property, the alleged original lender (or other entity claiming original or near original ownership of the note) signed a PSA that governed Claimant's alleged particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and described exactly how the homeowner's note is to find its way from the original lender to the REMIC trust.

49. A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA:

50. As part of the scheme process, the banks universally separated the promissory note from the Mortgage Under the common law, the owner of the note has the right to payments on the note and the owner of the Mortgage has the right to foreclose on the homeowner if the homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the Mortgage. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the Mortgage if the homeowner defaulted.

51. However, to streamline the securitization process, the investment banks created an entity called Mortgage Electronic Registrations System ("MERS"), who is one of the defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying, selling, and assignments of securitized mortgage notes (bypassing the county clerks' offices), would transfer deeds of trust to MERS, thereby separating the mortgage note from the Mortgage/Deed of Trust. MERS would hold the Mortgage/Deed of Trust for whoever later claimed to be the "owner" of the homeowners' mortgage note.

52. Claimant maintained Grantor status pursuant to 26 USC 677. Claimant is advised and believe that the separation of the Note and Mortgage make this process a nullity.

53. Claimant declares that Respondent, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Mortgage, resulting in imperfect security interests and claims. Even the alleged transfer documents present show only the transfer of the Mortgage not the note.

54. Claimaint further declares that Respondent, and each of them, cannot establish possession and proper transfer and/or indorsement of the Promissory Note and/or proper assignment of the Mortgage herein; therefore, none of the Respondent have perfected any claim of title or security interest in the Property. Respondent, and each of them, do not have the ability to establish that the mortgages that secure the alleged indebtedness, or Note, were legally or properly acquired.

55. Under the substantive law of New York, with governs foreclosure action by proffering documentary evidence that establishes the existence of (1) Mortgage, (2) Note, and (3) proof of default by the Mortgagor or Mortgogors. See *State Mortg. Agency v Lang* 672 N.Y.S.2d 745, 745-46 (2d Dep't 1998); *FGH Realty Credity Corp. v VRD Realty Corp.*, 647 N.Y.S.2d 229, 230(2d Dep't 1996).

56. New York State Republic law declares that to establish standing in a mortgage foreclosure action New York state law requires that the party seeking foreclosure demonstrate that it is "both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action was commenced "*U.S. Bank, N.A. v Crutch*, No. 09 CV 998 FB, 2012 WL 1605595, at *2 (E.D.N.Y. May 8, 2012) (citing *U.S. Bank, N.A. v Collymore*, 890 N.Y.S.2d 578 (2d Dep't 2009)). Assignment of the mortgage without the note it secures is insufficient to provide the assignee with standing to foreclose. See *Knox v Countrywide Bank*, 4 F. Supp. 3d 499, 508 (E.D.N.Y. 2014)(citing *Bank of N.Y. v Silverberg*, 926 N.Y.S.3d 532, 537 (2d Dep't 2011)). "[A]n assignment of a mortgage without the assignment of the underlying note or bond is a nullity," and

no interest is acquired by it. See *Deutsche Bank Nat'l Trust Co. v Barnett*, 931 N.Y.S. 2d 630, 637 (2d Dep't 2011).

57. An assignment of a Mortgage and Note under New York law may be made in two ways: by (1) written assignment or physical delivery. See *Robinson v H&R Block Bank FSB*, No. 12 Civ-4196(SMG), 2013 WL 2356106, at *4 (E.D.N.Y. May 29, 2013) (citing *U.S. Bank, N.A. v Squadron VCD, LLC*, 504 F. App'x 30, 33 (2d Cir. 2012)); *U.S. Bank N.A. v Bresler*, 39 Misc. 3d 1205(A), 2013 WL 1339550, at *3(N.Y. Sup Ct. Kings Cnty. Apr. 3, 2013).

58. The assignment presented by Respondent did not prove that Respondents holder of the Note becacuse assignor "could not transfer that which it did not hold"). Since the written assignments to Respondent failed to effectively transfer the Note, the assignment of the Mortgage is a nullity.

59. New York law further states than an assignment may be effected by physical delivery, without any written assignment. See *Boco v Argent Mortg. Co.*, No. 13 CV 1165(DLI)(CLP), 2014 WL 131210, at *5 (E.D.N.Y. Mar 31, 2014); Robinson, 2013 WL 2356106, at *4.

60. An "ineffective written mortgage assignment [has] no effect. It is a nullity. It does not follow that physical possession of the Note necessarily establishes standing. "Physical possession of a Note is sufficient to establish standing where there is an indorsement in black on the face of the Note.' Ullah, 2015 WL 3735230, at *5. (citing *Caraballo v Homecomings Fon.*, No. 12 Civ. 3127 (JPO). 2014 WL 2117225, at *4 (S.D.N.Y. May 21, 2014)) see also *Wells Fargo Bank, N.A. v Ostiguy*, 8 N.Y.S. 3d 669, 671 (3d Dep't 2015).

61. Claimant declares that a Promissory Note, which is a Negotiable Instrument, must be either indorsed to the foreclosing party on the Note itself (or a firmly affixed allonge) or indorsed in blank    or    to    bearer    and    physically    held    by    the    foreclosing    party." (see N.Y. U.C.C. §3-204(1)-(2)).

62. Claimant declares that a Promissory Note has a live span of only Nine (9) Months.

New York Uniform Commercial Code, states:

1. Negotiation is the transfer of an instrument is such form that the transferee becomes a holder. If the instrument payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer if it is negotiates by delivery.

2. An indorsement must be written by or behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

63. Claimant declares that N.Y.U.C.C. §3-202(1)(2) See also *HSBC Bank USA, N.A. v Roumianteseva*, 130 A.D. 3d 983, -- N.Y.S. 3d --, 2015 WL 4546774, at *1 (2d Dep't July 29, 2015); noting that "numerous trial courts throughout the Second Department have ruled that, a note secured by a mortgage is a negotiable instrument, and a transfer requires an indorsement on the instrument itself or on a paper so firmly affixed thereto as to become a part thereof, as per U.C.C. §3-202(2), in order to effectuate a valid assignment of the instrument"). New York Courts repeatedly found that a party failed to established it standing to foreclose if the above requirements are not met. Where the indorsement was attached to the Note with a paper clip or a copy "it is insuffient to make the Note a Negotiable Instrument. Thus, ownership of this Note could not be transferred by mere delivery. A copy of a Note and Mortgage is "**Counterfeit**" **Forged documents and is therefore a Nullity.**

64. Claimant declares tha whoever, wisth intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sells, or with like intent brings into the United States or keeps inpossession conceals any falsely made, forged, conerfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not mor than 20 years, or both. Title 18 USC § 473 – Dealing in counterfeit obligations or securites.

Title 18 USC § 474 – Plates, stones or anolog, digital, or electronic images for counterfeiting obligations or securities. Whoever, with intent to defraud, makes, executed, acqures, scan captures, records, receives, transmits, reproduces, sell or has in such person's control, custody, or possession, an analog, digital, or electronic image of any obligation or other security of the United States; Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression, except to the United States, or brings into the United States, any such engraving, photograph, print, or

impression, except by direction of some proper officer of the United States

65. Claimant declares that an actual controversy has arisen and now exists between the Claimant, and each of them. Since as to the time of filing of this claim, no Original Note and Mortgage has ever been produced, neither has there been any satisfaction of the alleged mortgage even when respondent claimed to have sold the property in an alleged Referee sale. Claimant desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Mortgage.

66. Claimant declares that Respondent has never produced any proof of Sales and any proof that any value was exchanged.

67. Claimant also seeks redress from Respondent identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a. An invalid and unperfected security interest in Claimant's Home hereinafter described;

    b. Void "True Sale(s)" violating NEW YORK state law and express terms of the Pooling and Servicing Agreement ("PSA") governing the securitization of Claimant's alleged mortgage;

    c. An incomplete and ineffectual perfection of a security interest in Claimant's Home;

## VI. <u>SPECIFIC FACTS</u>

68. On or about APRIL 17, 2008 acquired a property form Omar Smith for the sum of Five hundred and Forty Thousand dollars ($540,000.00) with an ernest money down of One hundred and Thrity Five Thousand dollars ($135,000.00). (hereinafter referred to as "Closing Date") Claimant delivered to MERS as nominee a Promissory Note and expected to receive a clear Title for the property. Claimant was lead to believe that Claimant allegedly going into a consumer credit transaction with MERS by obtaining a $405,000.00 mortgage loan secured by Claimant's principal residence, (Subject Property). This note was secured by a Mortgage on the Property in favor of MERS.

69. However the alleged loan was securitized, with the Note not being properly transferred to Respondent, TRUSTEE (TBD), acting as the Trustee for the TRUST (TBD) Trust holding Claimant's note. Documents filed with the SEC by the securitization participants allegedly claim that the note and Mortgage at issue in this case were sold, transferred and securitized by Respondent, with other loans and mortgages into the TRUST (TBD) Trust, which is a Common Law Trust formed pursuant to New York law. A detailed description of the mortgage loans which form the TRUST (TBD) Trust is included in Form 424B5 ("the Prospectus"), which has been duly

filed with the SEC and which can be accessed through the above mentioned footnote.

70. An expert, certified, forensic audit of the alleged loan documents reveals that Claimant's mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for.

71. The PSA requires that Claimant's note and Mortgage had to be indorsed and assigned, or transferred, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REMIC Trustee.

72. Claimant executed a series of documents, including but not limited to a Note and Mortgage, expecting to receive the value of the amount of note. The original beneficiary and nominee under the Mortgage was MERS.

73. Claimant is advised and believes, Note and the Mortgage executed by Claimant in favour of the alleged original lender and other Respondent, was not properly assigned and/or transferred to Respondent operating the pooled mortgage funds or REMIC trusts in accordance with the PSA and/or NEW YORK law to the entities making and receiving the purported assignments to this trust.

74. Claimant declares that the PSA requires that each Note or Mortgage had to be indorsed, assigned, or transferred, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note and Mortgage or both, was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Mortgage beyond the specified closing date for the Trust are void.

75. Claimant further declares that even if the Mortage had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

76. Claimant is advised and believes, and thereon alleges, that the TRUST (TBD) Trust had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment in mortgage backed securities as described in the Prospectus identified herein below. A detailed description of the mortgage loans which form the TRUST (TBD) Trust is included in

Form 424B5 ("the Prospectus"), which has been duly filed with the SEC and which can be accessed through the below mentioned footnote.[1]

77. Claimant also declares that the Note was secured by the Mortgage. Claimant declares that as of the date of the filing of this Claim, the Note and Mortgage had not been legally assigned to any other party or entity.

78. Claimant is advised and believes, that Respondent TRUSTEE (TBD), alleges that it is the "holder and owner" of the Note and the beneficiary of the Mortgage. However, the Note and Mortgage identify the mortgagee and note holder as the original lending institution or Mortgage Originator. Documents state that the original lender allegedly sold the mortgage loan to TRUST (TBD) Trust.

79. Claimant further alleges that no documents or records can be produced that demonstrate that prior to the closing date for TRUST (TBD) Trust, the Note was duly indorsed, transferred and delivered to TRUST (TBD) Trust, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Mortgage/Deed of Trust was duly assigned, transferred and delivered to TRUST (TBD) Trust, via the trustee TRUSTEE (TBD), including all intervening transfers/assignments.

80. Claimant further alleges that any documents that purport to transfer any interest in the Note to TRUST (TBD) Trust after the Trust closing date are void as a matter of law, pursuant to NEW YORK trust law and relevant portions of the PSA.

81. Claimant's debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected, thus became a nullity. The alleged holder of the Note is not the beneficiary of the Mortgage. The alleged beneficiary of Claimant's Mortgage does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest, or agent or nominee of the real aprt in interest, with regard to any action taken or to be taken against the Property.

82. Claimant is also advised and believes, and thereon allegess that at all times herein mentioned, and any assignment of a Mortgage without proper transfer of the obligation that it secures is a legal nullity. Note the assignment was only the Mortgage not the Note.

---

[1] http://www.sec.gov/Archives/edgar/data/815018/000116231807000567/m0565424b5.htm

83. In order for Respondent including the trustee of the Securitized Trust, to have a valid and enforceable secured claim against Claimant's Home, the party claiming the right to foreclose must prove and certify to all parties that, among other things required under the PSA:

   d. There was a complete and unbroken chain of indorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these indorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

   e. The Trustee of the Securitized Trust had actual physical possession of the Note at that point in time, when all indorsements and assignments had been completed. Absent such proof, Claimant alleges that the Trust cannot demonstrate that it had perfected its security interest in Claimant's Home that is the subject of this action. Therefore, if the Respondent, and each of them, did not hold and possess the Note on or before the closing date of the Trust herein, they are estopped and precluded from asserting any secured or unsecured claim in this case, through their agents or otherwise.

84. Claimant is advised and believes, and thereon alleges, that pursuant to the terms of the PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and indorse to the Trustee for the Securitized Trust, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the mortgage loan (Note) of Claimant's herein and all other mortgage loans identified in the PSA.

85. Claimant is further advised and believes, and thereon alleges, that the PSA provides that the transfers and assignm ents are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a "bona fide" or a "True Sale." Since, as alleged herein below, True Sales did not actually occur, Claimant alleges that the Defendant Trustees are estopped and precluded from asserting any secured or unsecured claim in this case.

86. Claimant is further advised and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly secured by the Mortgage/Deed of Trust on Claimant's Home herein.

87. Claimant is advised and believes, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Claimant further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to TRUST (TBD) Trust, which Mortgage Files include the original Deeds of Trust, herein.

88. Based upon the foregoing, Claimant is further advised and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Mortgage which renders invalid any security interest in the Claimant's alleged mortgage, including, but not limited to:

   a. The splitting or separation of title, ownership and interest in Claimant's Note and Mortgage of which the original lender is the holder, owner and beneficiary of Claimant's Mortgage;

   b. When the loan was sold to each intervening entity, there were no Assignments of the Mortgage to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c. The failure to assign and transfer the beneficial interest in Claimant's Mortgage to TRUSTEE (TBD) , in accordance with the PSA of the Defendants, as Securitization Participants;

   d. The failure to indorse, assign and transfer Claimant's Note and/or mortgage to Respondent TRUSTEE (TBD), as Trustee for TRUST (TBD) Trust, in accordance with the PSA and applicable New York law and/or the Uniform Commercial Code;

   e. No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under NEW YORK law, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

   f. Defendants, and each of them, violated the pertinent terms of the PSA.

89. Claimant, therefore, claim, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Respondent in this case, hold a perfected and secured claim in the Property; and that all Respondent are estopped and precluded from asserting an unsecured claim against Claimant's estate.

90. Claimant declares that in order to have a binding contract, the parties must have a meeting of the minds with regard "to all essential and material terms of the agreement." Player v. Chandler, 299

S.C. 101, 382 S.E.2d 891, 893 (1989).   These essential terms include price, time, and place. Edens v. Laurel Hill, Inc., 271 S.C. 360, 247 S.E.2d 434, 436 (1978).   The meeting of the minds cannot be based on "secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party."   Player, 382 S.E.2d at 894.

91. Furthermore, the terms of the finance transaction with GREYSTONE BANK are not clear or conspicuous, nor consistent, and are illegal which violates several statutes and is in essence creates a fraudulent and unenforceable loan. Further, this loan was underwritten without proper due diligence by GREYSTONE BANK as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns. GREYSTONE BANK also used a "GDW Cost of Savings" as the Index for the basis of this loan. Because the Lender controls this Index and it is directly based upon the average rate of interest GREYSTONE BANK, it was not a valid index for the basis of the loan.

92. In addition, and unbeknownst to Claimant, GREYSTONE BANK illegally, deceptively and/or otherwise unjustly, qualified Claimant for a loan which GREYSTONE BANK knew or should have known that Claimant could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had GREYSTONE BANK used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Claimant with a Mortgage Loan Origination Agreement the debt to income ratio, Claimant would not have qualified for the loan in the first place. Consequently, GREYSTONE BANK sold Claimant a loan product that it knew or should have known would never be able to be fully paid back by Claimant. GREYSTONE BANK ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Petitioner/Claimant's rights sold Claimant a deceptive loan product.

93. Additionally, Respondent and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Respondent(s).

94. The purpose of entering into the above-described mortgage loan transactions was for Petitioner/Claimant to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' combined actions as alleged herein.

## VII. FIRST CLAIM:
## WRONGFUL FORECLOSURE

95. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein

96. As a proximate result of the negligent or reckless conduct of Respondent the Consumers' credit has been impaired and Claimant are threatened with the eminent loss of their property despite the fact that they have made all payments in accordance with the loan agreement and at no time Claimant voluntarily convey property to anyone or anyone made any offer to the to buy Claimant's property.

97. As a result of this unlawful act by all respondent the Claimant has suffered irreparable harm and respondent has harrassed Claimant day and night.

98. As a proximate result of the negligent actions Respondent, the Claimant has suffered consequential damage and will continue to suffer additional damage in an amount to be fully proved at the time of trial.

## VIII SECOND CLAIM
## LACK OF CAPACITY TO FORECLOSE

99. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

100. An actual controversy has arisen and now exists between Claimant and Respondent specified hereinabove, regarding their respective rights and duties, in that Claimant contends that Respondent, and each of them, do not have the right to foreclose on the Property because Respndent and each of them, have failed to perfect any security interest in the Property, or cannot prove to the court they have a valid interest as a real party in interest to foreclose. Thus, the purported power of sale, or power to foreclose judicially, by the above specified Respondent, and each of them, no longer applies.

101. Claimant is advised and believes and there upon allege that the only individual who has standing to foreclose is the holder of the promissory note because they have a beneficial interest. The only individuals who are the holder of the promissory note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks or other entities holding the promissory note in the middle of the chain of transfers were paid in full.

102. Claimant is advised and believe that the promissory note is money. It was alread cashed and in order to bring fraud upon the court and upon the claimant they produced a copy of the note and claimed that the promissory note. Please take note that if you already cashed a check and presented the copy of the cashed check to be cashed again you are committing fraud.

103. Claimant further contends that the above specified Respondent, and each of them, do not have the right to foreclose on the Property because said Respondent(s), and each of them, did not properly comply with the terms of Respondent own securitization requirements (contained in the PSA) and falsely or fraudulently prepared documents required for Respondent, and each of them, to foreclose as a calculated and fraudulent business practice.

104. Claimant requests that this Court find that the purported power of sale contained in the Note and Mortgage has no force and effect at any time, because Respondent actions in the processing, handling and attempted foreclosure of this loan involved numerous forgery, fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Claimant to be at an equitable disadvantage to Respondent(s) and each of them. Claimant further requests that title to the Property remain in its name, with said Mortgage of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

**Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage**

105. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Since the creation of Claimant Note herein and Mortgage, Respondant MERS was named the "beneficiary" of the Mortgage.

107. Claimant is advised and believes, and thereon alleges, that Respondent MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities.

108. Claimant is advised and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

109. Claimant is advised and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the

transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

110. The Note in this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is indorsed; the attachments to the notice of default do not establish that indorsements were made, nor are there any other notices which establish that the original lender indorsed and sold the note to another party.

111. Furthermore, insofar as the parties to the securitization of Claimant's Note and Mortgage base their claim that the Note was transferred or assigned to Respondent. TRUSTEE (TBD), the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Mortgage does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt. An alleged of Indebtedness is not proof that a debt truly exists.

112. Pursuant to state law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specifically identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is indorsed. Respondent and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore, Respondent, MERS could only transfer whatever interest it had in the Mortgage. However, Alice Berman is not Vice President of MERS, but an employee of GREYSTONE AND COMPANY, INC. The Promissory Note and Mortgage are inseparable: an assignment of the Note carries the mortgage (ie, Mortgage) with it, while an assignment of the Mortgage alone is a nullity.[2] Therefore, if one party receives the Note and another party receives the Mortgage (as in this case), the holder of the Note prevails regardless of the order in which the interests were transferred.

113. Respondant, MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Claimant's mortgage, making any assignment from MERS defective and void ab inito.

---

[2] *HSBC Bank USA v. Hernandez*, 92 A.D.3d 843, 939 N.Y.S.2d 120 (2d Dep't 2012); *Citimortgage, Inc. v. Stosel*, 89 A.D.3d 887, 934 N.Y.S.2d 182 (2d Dep't 2011).

114. In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

115. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, Respondent, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Claimant.

116. Respondent and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the Note on the Property via a foreclosure action supported by forge, false and/or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Claimant's great and irreparable injury in that real property is unique.

117. The wrongful conduct of the above specified Respondent, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Claimant. Claimant will not have the beneficial use and enjoyment of Claimant's Home and will lose the Property to the act of forgery and fraudulent action of the Respondent(s).

118. Claimant has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Claimant. Claimant has suffered and will continue to suffer in the future unless Respondent(s) wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Claimant to determine the precise amount of damage Claimant will suffer.

119. Claimant declares that Respondent(s), Michael F. King allegedly claim that he sold FIRSTSTORM PROPERTIES 2, LLC the property at an auction that has never taken place. Firstly District Court lack jurisdiction to sell property in the state, Secondly, Michael F. King through a scheme to steal Claimant property draft up an alleged Referee Deed through an illegal conveyance to Firststorm Properties2, LLC who has never been a party to an action, but allegedly become the highest bidder through Rachael Kramer the alleged attorney for GREYSTONE BANK as without showing what authority she had to bid on the behalf of GREYSTONE BANK, then claimed she is also the attorney for FIRSTSTORM PARTNERS 2, LLC, yet was unaware of FIRSTSTORM PROPERTIES 2, LLC who is the alleged highest bidder. However, even though Michael F. King allegedly sold the property, he has never satisfied the alleged mortgage neither has Michael F.

King returned the Promissory Note to Claimant. Neither has Michael F. King reported to the New York State Office of the State Comptroller the Foreclosure funds.

120. Claimant declares that Respondent(s)/Defendant(s), Ferrell Donald took money from Claimant to protect the property, yet never made any effort to do so and claimed that he filed papers, which has never shown up in the court then he allegedly claimed that his hard drive was damaged and he has no copy of the document he allegedly filed in the court to protected Claimant's property. This action has cause irreparable harm to Claimant.

121. Claimant declares that Respondent, Jeffery Bodoff through his scheme trying to evict Claimant from Claimant property claiming Landlord/Tenant relation when there is no Landlord tenant relationship, neither did Claimant voluntarily convey or intend to convery property to Respondent. This action has cause irreparable harm to Claimant.

## IX. THIRD CLAIM
### LACK OF CPACITY TO SUE

122. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein

123. Claimant is advised and believes, and thereon alleges, that only a person who actually held title to disputed property could be a party in a lawsuit concerning the property. This technicality sometimes prevented a person who had the most to gain or lose on the issue from becoming a party and presenting his or her case. This rule has now been replaced by laws requiring every action to be prosecuted by the real party in interest. This is most important when one person is managing an asset for the benefit of another.

124. Claimant is advised and believes, and thereon alleges, that the U.S. Supreme Court has developed the standing doctrine to determine whether the litigants in a federal civil proceeding are the appropriate parties to raise the legal questions in the case. The Court has developed an elaborate body of principles defining the nature and contours of standing. In general, to have standing a party must have a personal stake in the outcome of the case. A plaintiff must have suffered some direct and substantial injury or be likely to suffer such an injury if a particular wrong is not redressed. A defendant must be the party responsible for perpetrating the alleged legal wrong.

125. Claimant is infomed and believes that non of the Respondents have ever proven indebtedness nor proven to sustain any injury or loss when they brought their alleged foreclosure suit.

## X. FOURTH CLAIM
## FRAUDULENT CONVERSION AND BREACH OF TRUST

126. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein

127. Fraudulent conversion means the action of taking into possession another man's money or property and converting or using them fraudulently for one's own use and benefit or for the use and benefit of a third party to whom the property or money does not belong.

128. A fraudulent conversion may take place when a person actually appropriates the property of another to his own beneficial use and enjoyment or to that of a third person who assists, by the alteration of its nature. It includes the assumption or the exercise of the right of ownership over the goods or personal assets belonging to another, to the alteration of their position or to the exclusion of the owner's right. To constitute a fraudulent conversion there must not only be the intent to defraud, but the intent must be accompanied by positive acts of fraud. A fraudulent conversion could be either, first, by the wrongful taking of the personal chattel, second, by some other illegal assertion of ownership, by illegally using another's goods, or third, by wrongful intention'.[Brandt v. State, 71 Ga. App. 221, 228 (Ga. Ct. App. 1944)]

129. Claimant is advised and believes, and thereon alleges, that Michael F. King did not conducted a Sale, neither has he produced any proof that their was any indebtedness.

130. Claimant is advised and believes that Respondent converted Claimant signature into money with full disclosure.

131. Michael F. King has not proven to following any procedure nor how he carried out the term and condition of sale and never filed a Satisfication of Mortgage

132. Michael F. King has not proven what authority he had to produce a Deed on the behalf of Claimant and show that he was given power of attorney to represent Claimant. Michael F. King has not shown at what point Claimant authorized him to sign on Claimant or at what point Claimant voiluntarily conveyed title to Michael F.King.

## XI. FIFTH CLAIM

## FRAUD IN THE CONCEALMENT

133. Petitioner/ Claimant re-claim and incorporatess by reference all preceding paragraphs as though fully set forth herein.

134. A release also is voidable if it was procured by the concealment of material factsin breach of a fiduciary duty (Littman v Magee 64 AD3d 14, 17 [1st Dept 2008]; H.W.Collections, Inc. v Kolbert, 256 AD2d 240, 241 [1st Dept 1998]; Matter of Birnbaum v Birnbaum, 117 AD2d 409, 419 [4th Dept 1986]).

135. Respondent(s)/Defendant(s) concealed the fact that they were using Petitioner/Claimant credit to generate money by Petitioner/Claimant's signature.

136. Respondent(s)/Defendant(s) concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Respondent(s)/Defendant(s) concealed the fact that Borrower's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Petitioner/Claimant that was known by Respondent(s)/Defendant(s) but not disclosed.

137. Respondent(s)/Defendant(s) knew or should have known that had the truth been disclosed, Petitioner/Claimant would not have entered into the alleged Loans.

138. Respondent(s)/Defendant(s) intended to induce Petitioner/Claimant based on these misrepresentations and improper disclosures.

139. Claimant reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Claimant could have been alerted to issues of concern. Claimant would have known of Respondent true intentions and profits from the proposed risky loan. Claimant would have known that the actions of Respondent would have an adverse effect on the value of Claimant's home.

140. Respondent failure to disclose the material terms of the transaction has caused Claimant great harm, duress, and sleepless nights.

141. Respondent were aware of the misrepresentations and profited from them and still continue their scheme to profit from defrauding Claimant.

142. As a direct and proximate result of the misrepresentations and concealment Claimant was damaged in an amount of Eight Hundred Million Dollars ($800,000,000.00) to be proven at trial, including but not limited to costs of Loan, damage to Claimant's financial security, emotional distress, and Claimant has incurred costs and counselling fees.

143. Respondent are guilty of malice, fraud and/or oppression. Respondent actions were malicious and done willfully in conscious disregard of the rights and safety of Claimant in that the actions were calculated to injure Claimant. As such Claimant is entitled to recover, in addition to actual damages, punitive damages to punish Respondent and to deter them from engaging in future misconduct.

## XII. SIXTH CLAIM:

## FRAUD IN THE INDUCEMENT

144. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

145. Respondent, intentionally misrepresented to Claimant those Respondent were entitled to exercise the power of sale provision contained in the Mortgage. In fact, Respondent were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

146. Respondent misrepresented that they are the "holder and owner" of the Note and the beneficiary. However, this was not true and was a misrepresentation of material fact. Documents state that the original alleged lender sold the alleged mortgage loan to TRUST (TBD) Trust. Respondent were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Respondent are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest. This type of conduct is outrageous.

147. Respondent failure to disclose the material terms of the transaction induced Claimant to enter into the loans and accept the Services as alleged herein.

148. The material misrepresentations were made by Respondent with the intent to cause Claimant to reasonably rely on the misrepresentation in order to induce the Claimant to rely on the misrepresentations and foreclosure on the Property. This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from

the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors on Wall Street and other New York investment banks.

149. Respondent were aware of the misrepresentations and profited from them.

150. As a direct and proximate result of the misrepresentations and concealment, Claimant was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Claimant's financial security, emotional distress, and Claimant has incurred costs and Counselling fees.

151. Respondent are guilty of malice, fraud and/or oppression. Respondent actions were malicious and done willfully in conscious disregard of the rights and safety of Claimant in that the actions were calculated to injure Claimant. As such Claimant is entitled to recover, in addition to actual damages, punitive damages to punish Respondent and to deter them from engaging in future misconduct.

## XIII. SEVENTH CLAIM:
## VIOLATION OF THE CONSUMER PROTECTION ACT

152. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

153. The defendants have engaged in a pattern of unfair practices in violation of the New York Consumer Protection Act, RCW 19.86 et seq. entitling the Consumers to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

## XIV. EIGHT CLAIM:
## DECEPTIVE TRADE PRACTICE

154. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

155. Claimant declares that Deceptive trade practices may be characterized by disinformation, false claims, and other misleading tactics that are intended to lure the public into buying a product or service.

156. Claimant declares that Respondent through the manipulating the court system used the Deceptive Trade Practice scheme to steal people's propeties with forged, and fruadulent documents.

157. Claimant declares that Respondent never intended negiotate in good faith. They function like phantoms and gave run around. Respondent never validated any debt, pursuant to 12 USC §1692. However, through copies of Notes and Mortgages presented to the court and with the help of Bar

attorneys and law firms manipulated the courts system to steal properties. Farell Donald who was hired to defend the alleged deceptive act neglected to defend tha cause that damages to claimant. Respondent wanted only to pursue "revenue through collection of late fees and penalties at a foreclosure sale, since they are not the Holder in due course of the Note.

### XV. NINETH CLAIM:

### SLANDER OF CREDIT

158. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

159. The Consumers allege that the actions and inactions of the Respondent had impaired Claimant credit causing Claimant to lose the ability to have good credit entitling them to damages, including statutory punitive damages pursuant to state and federal law, all to be proved at the time of trial.

### XVI. TENTH CLAIM:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

160. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

161. The defendants have intentionally or negligently taken actions which have caused the Claimants severe emotional distress.

162. The actions of Defendants, as set forth herein, have resulted in the Claimant being threatened with the loss of the Property.

163. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

164. Defendants intentionally, knowingly and recklessly misrepresented to the Claimant those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

165. Defendants' conduct – fraudulently attempting to foreclose or claimng the right to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

166. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Claimant, such that Claimant would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure

the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

167. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

168. As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Claimant's home or claim of the right to foreclose on Claimant's home, the Claimant has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

169. Claimant did not default in the manner stated in the Notice of Default, yet because Defendants' outrageous conduct, Claimant have been living under the constant emotional nightmare of losing the Property.

170. As a proximate cause of Defendants' conduct, Claimant has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

171. The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Claimant is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

## XVII. ELEVENTHCLAIM:
## VIOLATION OF RESPA, 1 U.S.C. § 2601 ET. SEQ.

172. Claimant re-claim and incorporates by reference all preceding paragraphs as though fully set forth herein.

173. The loan to Claimant was a federally regulated mortgage loan as defined in RESPA.

174. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

    a) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

    b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

175. In applying this test, HUD believes that total compensation should be scrutinized to assure that it

is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Claimant find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Claimant suffer financially as a result of the loan product sold to Claimant.

176. No separate fee agreements, regarding the use of GREYSTONE and FIRST STORM Cost of Savings" as the Index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided.

177. Respondent violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving.

178. As a proximate result of Defendants' actions, Claimant has been damages in an amount not yet ascertained, to be proven at trial.

## XVIII TWELVETH CLAIM:

### VOID JUDGMENT

179. Claimant re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

180. Claimant declares that Void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment, State v. Richie, 20 S.W.3d 624 (Tenn 2000)

181. Claimant declares that Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process, U.S.C.A Const. Amend. 5 – Triad Energy Corp. v. McNell 110 F.R.D. 382 (S.D.N.Y. 1986).

182. Claimant declares that any Judgment is void if court that rendered it lacked personal or subject matter jurisdiction; void judgment is nullity and may be vacated at any time, Matter of Marriage of Welliver, 869 P.2d 653 (Kan. 1994).

183. Claimant declares that a Void judgment is one rendered in absence of jurisdiction over subject matters or parties. Lange v. Johnson, 204 N, W.2d 205 (Minn.1973).

184. Claimant declares that the judgment pronounced by a court without jurisdiction is void. "The court is required to inquire into the basis of subject matter jurisdiction even if not raised by the parties. "South Point Inc. v Krawczky no 07-cv-576A, 2008 WL 434590, at "3 (W.D.N.Y. Feb. 14, 2008)

"Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted" Lantana v. Hooper, 102 F. 2d 188. "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal." Old Wayne Mut. I. Assoc v McDonough, U.S. 8, 27 S. Ct. 236 (1907); Williams v Berry, 8 Jpw/ 495 540, 12 L, Ed. 1170, 1189 (1850); Rose v Himely, 4 Cranch 241, 269, 2. Ed. 608, 617 (1808). Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process, U.S.C.A. Connst. Amend 5 – Triad Energy Corp. v Mcnell 110 F.R.D. 382 (S.D.N.Y. 1986).

## XIX. THIRTEENTH CLAIM:
## PUNITIVE DAMAGES

185. Claimant re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

186. Punitive damages, also known as exemplary damages, may be awarded by the trier of fact (a jury or a judge, if a jury trial was waived) in addition to actual damages, which compensate a plaintiff for the losses suffered due to the harm caused by the defendant. Punitive damages are a way of punishing the defendant in a civil lawsuit and are based on the theory that the interests of society and the individual harmed can be met by imposing additional damages on the defendant. Since the 1970s, punitive damages have been criticized by U.S. business and insurance groups which allege that exorbitant punitive damage awards have driven up the cost of doing business. Punitive damages have been characterized as "quasi-criminal" because they stand halfway between the criminal and Civil Law. Though they are awarded to a plaintiff in a private civil lawsuit, they are no compensatory and in the nature of a criminal fine.

## XX. FOURTEENTH CLAIM:
## RESCISSION

187. Claimant re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

188. Claimant is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; 4) Fraudulent Inducement; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note and Mortgage/Deed of Trust; and 5) Public

Policy Grounds, each of which provides independent grounds for relief.

189. The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Claimant's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Claimant in a loan she could not afford and would ultimately benefit Respondent following the negative amortization that accrued.

190. The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

191. As a proximate result of Respondent actions, Claimant has been damaged in an amount not yet ascertained, to be proven at trial.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Claimant prays for rescission of the stated alleged loan in its entirety.

WHEREFORE Claimant, will ask for the following for each Cause of Action to be awarded:

### <u>FIRST CAUSE OF ACTION – WRONGFUL FORECLOSURE</u>

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Claimant, is the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f. Determines all adverse claims to the real property in this proceeding;

g. Claimant is entitled to the exclusive possession of the property;

h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## SECOND CAUSE OF ACTION – CAPACITY TO SUE

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a. Claimant, is the prevailing party;

   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c. The Sponsor has no enforceable secured or unsecured claim against the Property;

   d. The Depositor has no enforceable secured or unsecured claim against the Property;

   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f. Determines all adverse claims to the real property in this proceeding;

   g. Claimant is entitled to the exclusive possession of the property;

   h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## THIRD CAUSE OF ACTION – FRAUDULENT CONVERSION/BREACH OF TRUST

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Claimant, is the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;

    e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

    f. Determines all adverse claims to the real property in this proceeding;

    g. Claimant is entitled to the exclusive possession of the property;

    h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

    i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## FOURTH CAUSE OF ACTION – FRAUD IN THE CONCEALMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## FIFTH CAUSE OF ACTION – FRAUD IN THE INDUCEMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## SIXTH CAUSE OF ACTION – VIOLATION OF THE CONSUMER PROTECTION ACT.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## SEVENTH CAUSE OF ACTION – DECEPTIVE TRADE PRACTICE

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a. Claimant, is the prevailing party;

   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c. The Sponsor has no enforceable secured or unsecured claim against the Property;

   d. The Depositor has no enforceable secured or unsecured claim against the Property;

   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f. Determines all adverse claims to the real property in this proceeding;

   g. Claimant is entitled to the exclusive possession of the property;

   h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## EIGHT CAUSE OF ACTION – VIOLATION OF T.I.L.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a. Claimant, is the prevailing party;

   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c. The Sponsor has no enforceable secured or unsecured claim against the Property;

   d. The Depositor has no enforceable secured or unsecured claim against the Property;

   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f. Determines all adverse claims to the real property in this proceeding;

   g. Claimant is entitled to the exclusive possession of the property;

   h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## NINTH CAUSE OF ACTION – VIOLATION OF R.E.S.P.A.

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

a. Claimant, Claimant is the prevailing party;

b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

c. The Sponsor has no enforceable secured or unsecured claim against the Property;

d. The Depositor has no enforceable secured or unsecured claim against the Property;

e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

f. Determines all adverse claims to the real property in this proceeding;

g. Claimant is entitled to the exclusive possession of the property;

h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## TENTH CAUSE OF ACTION – SLANDER OF CREDIT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## ELEVENTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## TWELVETH CAUSE OF ACTION – VOID JUDGMENT

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

## THIRTEENTH CAUSE OF ACTION – PUNITIVE DAMAGES

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a. Claimant, Claimant is the prevailing party;

   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c. The Sponsor has no enforceable secured or unsecured claim against the Property;

   d. The Depositor has no enforceable secured or unsecured claim against the Property;

   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f. Determines all adverse claims to the real property in this proceeding;

   g. Claimant is entitled to the exclusive possession of the property;

   h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## FOURTEENTH CAUSE OF ACTION - RECISSION

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

   a. Claimant, Claimant is the prevailing party;

   b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

   c. The Sponsor has no enforceable secured or unsecured claim against the Property;

   d. The Depositor has no enforceable secured or unsecured claim against the Property;

   e. The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

   f. Determines all adverse claims to the real property in this proceeding;

   g. Claimant is entitled to the exclusive possession of the property;

   h. Claimant owns in fee simple, and is entitled to the quiet and peaceful possession of, the above-described real property.

   i. Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

Dated: _____

UCC1-308/UCC1-207

By:_____

    Paul the son of Vassel, Executor

For PAUL VASSEL

State of New York )
                  ) ss:
County of Queens )


## JURAT

Subscribed and affirmed before me on this ___ day of _____, 2017 by

_____, proved to me on the basis of

satisfactory evidence to be the living sentient, flesh and blood man with blood flowing, heart

pumping, Finger and Foot Prints standing before me.


_____
Notary Public

KARRINE MONTAQUE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MO6166178
Qualified in Nassau County
My Commission Expires May 21, 2016


UCC1-308/UCC1-207/UCC3-415/UCC3-402(b)(2)

By:_____
    Paul the son of Vassel Executor for
    PAUL VASSEL
    Queens, New York

PROCESS SERVER

JAN 2 5 2017

SIGNED FOR BY

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF QUEENS

**SPECIAL TERM**

------------------------------------------------------------x

paul Anthony son of vassel, living man, Executor )  Index No.: 638/2017
Ex Relatione
PAUL VASSEL

              Petitioner(s)/Plaintiff(s),    )  **NOTICE OF PENDENCY**

      -against-                  )

FIRSTORM PROPERTIES 2, LLC;         )  **Premises Address:**
FIRSTORM PARTNERS 2 LLC; GREYSTONE BANK AKA  )  **109-18 Merrick Blvd**
GREYSTONE MULTIUNIT, LLC & GREYSTONE   )  **Jamaica, NY 11433**
COMPANY, INC; TRUSTEE (TBD) AS TRUSTEE FOR )  **Block 10188   Lot 8**
SECURITIZED TRUST (TBD); SERVICER (TBD);
MORTGAGE ELECTRONIC REGISTRATION SYSTEM,
AKA "MERS"; MICHAEL F. KING;
PLAZA GARDENS REAL ESTATE CORP;
WILLIAM MCDONALD; MARK R. CASHMAN;
ALBERT BASAL; FARREL R. DONALD;
STEPHEN SAMUEL WEINTRAUB; DAVID GONGORA;
JEFFREY A. BODOFF;
THE ABRAMSON LAW GROUP, PLLC;
OLD REPUBLIC NATIONAL TITLE INSURANCE CO.;
TRIMONT REAL ESTATE ADVISORS; SUCCESSORS,
DOES 1 – 100
           Respondent(s)/Defendant(s)
------------------------------------------------------------x

The Clerk of the County of Queens, is directed to Index this Notice against the names of all the

Respondent(s)/Defendant(s) herein.


**NOTICE IS HEREBY GIVEN** that an action has been commenced and is now pending in the above

captioned Court upon the claim and demand of the above-named  Petitioner, Vassel, Paul Executor,

Ex Relatione for PAUL VASSEL and against the above-name Respondent(s) for a Judgment in the sum of

Eight Hundred Million Dollars ($800,000,000.00) (1) enjoining the use of the property (Land); (2)

directing the restoration of the grades thereof of the extent and the court shall deem necessary and (3)

Impressing a Lien as of the commencement of this action upon the property (Land) to assure the

performance of the acts and things directed or required by this court to be done by the Respondents and that the real property is Queens County affected thereby is particularly described; All that certain Plot, Place or Parcel of Land with Buildings and Valuable improvements Structurally Sound and Water Tight, thereon erected, situated, lying resting and being in Queens County and New York Territories and Possessions of the united States (analogous) and filed in the office of the Clerk of Queens County. This claim has affect real estate which has the following legal description as Schedule A made a part thereof.:

Affirmed and sealed by the voluntary act of my hand this _____ day of January 2017 A.D.

UCC1-308/UCC1-207

By:_____

paul anthony son of vassel, Executor
Ex Ralatione PAUL VASSEL
Address:   109-18 Merrick Blvd,
Jamaica, NY 11433
718-408-2424



**Schedule A Description**

Title Number **CAQ-UGT-08137**                                                Page   **1**

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Queens, County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Merrick Boulevard (formerly Merrick Road) distant 40.19 feet Southerly from the corner formed by the intersection of the Westerly side of Merrick Boulevard with the Southerly side of 109th Avenue (formerly Packard Avenue);

RUNNING THENCE Westerly and parallel with 109th Avenue and part of the distance through a party wall, 104.06 feet;

THENCE Southerly at right angles to 109th Avenue, 19.31 feet;

THENCE Easterly again parallel with 109th Avenue and part of the distance through a party wall, 108.16 feet to the Westerly side of Merrick Boulevard;

THENCE Northerly along the Westerly side of Merrick Boulevard, 19.74 feet to the point or place of BEGINNING.

United General Title Insurance Company
Capital Abstract Co., Inc.